IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| JASON LUMLEY | § | |
| VS. | § | CIVIL ACTION NO. 9:20-CV-183 |
| DIRECTOR, BOBBY LUMPKIN | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Jason Lumley, an inmate currently confined at the Hughes Unit with the Texas Department of Criminal Justice, Correctional Institutions Division, proceeding *pro se* and *in forma pauperis*, filed this civil rights action pursuant to 42 U.S.C. § 1983.

The above-styled action was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636 and the Local Rules for the Assignment of Duties to the United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Procedural & Factual Background

Plaintiff filed the above-referenced civil rights action pursuant to 42 U.S.C. § 1983 on August 20, 2020, seeking a preliminary and permanent injunction to grow his hair long in accordance with his Native American religious beliefs (doc. # 1). A *Spears* Hearing was held on October 7, 2020 pursuant to *Spears v. McCotter*, 766 F.2d 169 (5th Cir. 1985), in order to give Plaintiff the opportunity to fully develop the factual basis of his claims. Following the hearing, the Defendant was ordered to answer on October 8, 2020 (doc. # 18). Plaintiff amended his complaint to which the Defendant answered on November 10, 2020 (doc. #s 20-23). A Docket Control Order was entered on November 23, 2020 (doc. # 25). After substituting in acting Director Bobby Lumpkin

for TDCJ as the Defendant in this case, Defendant moved to stay the deadlines on January 14, 2021 (doc. # 32). In the motion to stay, Defendant advised the court that TDCJ was working to revise its offender grooming policy that will afford Plaintiff the relief he requested, a religious exemption to TDCJ's policy to grow long hair in accordance wit his Native American religious beliefs. *Id*. The motion was granted on March 15, 2021 (doc. # 35).

On April 14, 2021, the Director informed the court the parties were in the process of settlement negotiations (doc. # 38). On April 28, 2021, Plaintiff filed a status update, notified the court he had suffered harassment and retaliation for growing his hair long and was disciplined for refusing to cut his hair. *Id*. In addition, Plaintiff reported that he was told that if he received two more disciplinary cases, he would be locked up. *Id*. Finally, Plaintiff stated he was not opposed to further settlement negotiations provided that he was not harassed nor retaliated against. *Id*.

Two status conferences were held in June of 2021, wherein Defendant informed the court that TDCJ was still in the process of changing their grooming policy but ensured the court that TDCJ unit staff would not interfere in Plaintiff's ability to grow his hair long. (doc. #s 42-43). On December 13, 2021, Defendant filed another Status Report stating the following:

> In the interest of resolving the current dispute, Defendant Lumpkin and TDCJ had been engaged in settlement negotiations throughout the summer of 2021. On September 21, 2021, Lumley's 07 Classification Screen was updated to indicate that Lumley may grow long hair in accordance with his Native American religious beliefs. *See* Exhibit A. As of the date of this status update, Lumley's 07 Classification Screen continues to identify Lumley as an inmate with permission to grow his hair long. Because Lumley has received the injunctive relief he originally sought through the filing of his lawsuit, Lumley's claims against Defendant are now moot.

Status Report, Exhibit A - Classification Screen (doc. # 49).

Plaintiff responded on January 4, 2022, stating although he has been moved to the Hughes Unit, which is a Native American Unit, he is still being harassed and told to cut his hair. Plaintiff contends he did not agree to any negotiations or settlement and denied there is any signed agreement between the parties. Furthermore, Plaintiff argues the TDCJ grooming policy still remains the same. Plaintiff contends that if his civil rights case is dismissed as moot, TDCJ could come back and force him to cut his hair as already threatened and then he would be forced to file another suit and pay another filing fee. *Id*. As the record was unclear if the TDCJ policy has, in fact, been changed, the undersigned ordered the Defendant to respond to Plaintiff's assertion that the injunctive relief he requested is not mooted solely by a classification change (doc. # 52).

The Defendant responded and filed a Motion to Dismiss on January 18, 2022, providing an affidavit from John Werner, the Deputy Division Director, who stated the following:

> Plaintiff Lumley has received the relief he originally sought in bringing his lawsuit when his 07 'Current institutional Adjustment Record' Screen (07 Screen) was updated on September 9, 2021, to include an indicator that Plaintiff Lumley be afforded an exception to TDCJ's current grooming policy and permitted to grow his hair long in accordance with his religious beliefs.
>
> I am submitting this affidavit in response to the Court's order to respond to Plaintiff Lumley's reply to Defendant Lumpkin's December 13, 2021, status update. I have been informed that Plaintiff Lumley has expressed concerns in his January 4, 2022, status update with this Court that the 'Approved for Religious Long Hair' indicator on his 07 Screen would not serve to afford him the ability to grow his hair long in accordance with his religious beliefs.
>
> The 07 Screen is an internal record maintained by TDCJ that is particular to each individual inmate incarcerated within TDCJ. The 07 Screen stores State Classification Committee (SCC) and Unit Classification Committee (UCC) comments. The 07 Screen captures information specific to the individual inmate such as Security Threat Group affiliation, housing and cell assignment information, whether the inmate has been victimized, or received a security precaution designator.

An inmate's 07 Screen also documents when an inmate receives specialized permission such as authorization to grow a religious bear or religious long hair. Through accessing an inmate's 07 Screen, all unit level correctional officers, supervisors, assistant wardens, and wardens are notified of the permissions and restrictions pertaining to a specific inmate. Specifically, if Plaintiff Lumley's 07 Screen contains an 'Approved for Religious Long Hair' indicator, all unit level officials are notified that Plaintiff Lumely has permission to grow his hair long and will not be disciplined for growing long hair provided that he complies with the following conditions preserving institutional security and hygienic cleanliness:

1. he keeps his hair clean and neat in appearance;
2. he will not cut designs, lines, patterns, or symbols in his scalp or hair;
3. he will not style his hair in a mohawk, cornrows, dreadlocks, or braids;
4. his hair must be readily and throughly searchable for contraband at all times;
5. he does not receive a security precaution designator for escape, attempted escape, taking a hostage(s), or defeating mechanical restraints or a secure cell;
6. he is not found guilty of concealing contraband in, or other misuse, of his hair.

If Plaintiff Lumley violates any of the above-mentioned restrictions, including refusing to allow a search of his hair or failing to comply with an order to search his hair, then TDCJ reserves the right to force cut his hair for these violations. Further, TDCJ may indefinitely restrict Plaintiff Lumley's ability to grow his hair long in the future if he violates any of the above-mentioned restrictions. If Plaintiff Lumley abides by these restrictions, he cannot receive a disciplinary for growing long hair.

Plaintiff Lumley's 07 Screen indicator that he has been 'Approved for Religious Long Hair,' will not be changed or removed as long as he abides by the conditions outlined above or until TDCJ adopts a revised grooming policy affording all inmates the ability to grow long hair. Because the 07 Screen is agency wide and not unit based, Plaintiff Lumley's authorization to grow his hair long in accordance with his religious beliefs will not be affected.

Plaintiff Lumley's 07 Screen shows that he is 'Approved for Religious Long Hair' and reflects the indicator was placed on September 9, 2021. Since that time, Plaintiff Lumley has enjoyed the ability to grow his hair long in accordance with his Native American religious beliefs. Plaintiff Lumley's

>own behavior is the only factor out of TDCJ's control that could result in revocation of this accommodation.

Affidavit, John Werner (doc. # 53-1).

Plaintiff responded to the Motion to Dismiss on January 31, 2022 (doc. # 54). Plaintiff argues that because TDCJ has the discretion to force cut his hair or indefinitely restrict his ability to grow his hair long if Plaintiff violates the conditions imposed, the relief he seeks is not hypothetical nor is the case moot. *Id*. Plaintiff also argues no settlement has been reached and TDCJ policy has not, in fact, been changed. *Id*. As a result, Plaintiff contends TDCJ is attempting to enforce the rules and stipulations of TDCJ's proposed settlement agreement that Plaintiff refused to agree to. *Id*.

## Standards of Review

In considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, "a court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001) (citation omitted). When a motion to dismiss for lack of subject matter jurisdiction is supported by evidence, it is considered a factual attack, and "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). The court is therefore "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id*. In response to a factual attack, the plaintiff, as the party seeking to invoke jurisdiction, has the burden of submitting evidence and proving by a preponder-

ance of the evidence the existence of subject matter jurisdiction. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). Regardless of whether the attack is facial or factual, the party asserting federal jurisdiction "constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam).

<u>Analysis</u>

Federal courts are courts of limited jurisdiction and must have statutory or constitutional power to adjudicate a claim. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) (citations omitted); *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Absent jurisdiction conferred by statute or the Constitution, they lack the power to adjudicate claims and must dismiss an action if subject matter jurisdiction is lacking. *Id.*; *Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994)). The court cannot assume that it has jurisdiction; rather, "the basis upon which jurisdiction depends must be alleged affirmatively and distinctly and cannot be established argumentatively or by mere inference." *Getty Oil Corp. v. Ins. Co. of N.A.*, 841 F.2d 1254, 1259 (5th Cir. 1988) (citing *Illinois Cent. Gulf R.R. Co. v. Pargas, Inc.*, 706 F.2d 633, 737 n. 2 (5th Cir. 1983)).

Article III of the United States Constitution limits federal jurisdiction to actual "[c]ases" and "[c]ontroversies." U.S. CONST. art. III, § 2. "[C]ourts may not decide cases that since have become moot because there is no longer a live case or controversy." *Tex. v. EEOC*, 933 F.3d 433, 449 (5th Cir. 2019). The requirement that there be a case-or-controversy "subsists through all stages of federal judicial proceedings, trial and appellate. [I]t is not enough that a dispute was very much alive when suit was filed; the parties must continue to have a personal stake in the ultimate disposition of

the lawsuits." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (internal citation and quotation marks omitted). A case becomes moot when "it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Serv. Emp. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012) (internal quotation marks omitted).

With mootness, a plaintiff must demonstrate that he has a personal stake in the outcome of the litigation, and it continues through "all stages of review, not merely at the time the complaint is filed. A case that becomes moot at any point during the proceedings is . . . outside the jurisdiction of the federal courts." *United States v. Sanchez-Gomez*, 138 S.Ct. 1532, 1537 (2018) (citation and quotation marks omitted).

As discussed above, Plaintiff has been allowed to grow his hair long accordance to his Native American religious beliefs since September 21, 2021. Plaintiff's sole complaint has already been cured. The Defendant has sworn under oath that Plaintiff will continue to be able to wear his hair long as requested unless he fails to meet the conditions laid out above. *See Moors v. Lumpkin*, 850 F. App'x 318 (5th Cir. June 18, 2021) (not designated for publication) (summary dismissal of complaint was proper and no live case or controversy before the court where Plaintiff provided kosher meals as requested). While Plaintiff expresses concern that he may be forced to cut his hair at some unidentified point in the future or disciplined for wearing his hair long, such a concern is hypothetical in nature.¹ Federal courts do not render advisory opinions which would be required in considering Plaintiff's concerns. *See Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 895, 898 (5th Cir. 2000) (quoting *Life Partners, Inc. v. Life Ins. Co. Of N.Am.*, 203 F.3d 324, 325 (5th Cir. 1999)).

---

¹Courts have recognized that revocation of a privilege is the least restrictive means of furthering interests in a number of contexts. *See Holt v. Hobbs*, 574 U.S. 352, 369 (2015) (institution could withdrawn beard accommodation if abused); *Ali v. Stephens*, 822 F.3d 776, 795 (5th Cir. 2016) (Texas prison could revoke beard and kufi privileges as least restrictive means).

There is no remaining live issue or controversy and Plaintiff's claims are dismissed as moot.

### Recommendation

This civil rights action should be dismissed for lack of subject matter jurisdiction as moot.

### Objections

Within fourteen (14) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings of facts, conclusions of law and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(c).

Failure to file written objections to the proposed findings of facts, conclusions of law and recommendations contained within this report within fourteen (14) days after service shall bar an aggrieved party from the entitlement of *de novo* review by the district court of the proposed findings, conclusions and recommendations and from appellate review of factual findings and legal conclusions accepted by the district court except on grounds of plain error. *Douglass v. United Servs. Auto. Assoc'n,* 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

SIGNED this 15th day of June, 2022.

_____
Zack Hawthorn
United States Magistrate Judge